Hear ye, hear ye, hear ye. The United States Court of Appeals for the 11th Circuit is now open according to law. God save the United States and this honorable court. Good morning. This is Judge Bill Pryor. This is our last day of oral argument for this panel this week. We have had a good week and Judge Grant and I have been very happy to have our, very pleased to have our colleagues from the Middle District of Alabama, I mean Middle District of Florida, Judge John Anton, sit with us and this is not the first time he's done that. First time he's assisted us with our work and we really appreciate having him back this week. We have two cases to hear this morning. The first is United States v. Mastin. Mr. Herndon, Yes, sir, your honor. Good morning. Good morning. You may begin. May it please the court, my name is Steve Herndon and I am the attorney for Appellant Darrius Mastin. We're asking the court to reverse the denial of this motion to suppress and to enter into an alternative to grant him a new trial. When the officers approached room 311, they knew immediately that Darrius Mastin was not who they were looking to arrest. Nonetheless, they seized him and not because of anything he had done. The magistrate's findings of fact, which were unobjected to, indicate that there was not even a minimal level of reasonable suspicion to warrant a Terry stop or for that sake even a pat down of Mr. Mastin. Unlike the officers in Enslin in the 9th Circuit case who came across Mr. Enslin in a back bedroom in the process of executing an arrest warrant, there they instructed and ordered Mr. Enslin to show hands. Here, the officers, even knowing that Mr. Mastin was really in the process of just leaving, that's what they understood him to be, they ordered him to show his hands, certainly permissible. They ordered him to lay down on the ground. They ordered him to crawl out the door. All of these would be seizure and coexistence of an arrest. In essence, they were, I think, treating him as if he were the suspect of the arrest warrant, knowing all the while that he was not. They had no reason to believe he was involved in any criminal activity. Why is this case any different than Summers, where third parties can be briefly detained during execution of a search warrant? What makes the execution of an arrest warrant any different? Yes, Your Honor. I think it's one that categorically they're different concepts and they're important concepts. With the search warrant, you've got a neutral magistrate who has determined that this premises will be searched and anyone who's on that premises, it's reasonable to understand that they would be categorically detained or would be detained. The interest of having the magistrate judge make that determination shows us to be a different scenario. Here, I believe we are judging the reasonableness of the actions in light of the circumstances. There may be a case where the 11th Circuit would visit whether categorical detention under Summers would be appropriate. I would submit this is not a case that warrants that kind of consideration. Wasn't one of the Supreme Court's justifications in Summers, officer safety? Yes, Your Honor. Do you think that when officers are executing an arrest warrant or attempting to do so for would be an important factor there as well? I certainly think it's an important factor, Your Honor. I think the cases that we've cited in our brief all say for officer safety, the brief detention of an individual, whether to show his hands, to know that he's not possessing a weapon or to step aside, but the case law- Let's go to the second interest that Summers stated, which was the orderly completion of the search. So we'd say here the orderly completion of the execution of the arrest warrant. Why isn't that the same? Well, Your Honor, I think it was more than was necessary to execute the arrest warrant or determine whether the individuals were there. I mean, they knew Mr. Mastin was not- I mean, he's just coming out of the hotel room. They haven't gone in yet. The things that you just described of ordering him to get on the ground and to crawl out, they don't know. They're not able to effectuate, to execute the arrest warrant until they have him secure. Are they? Well, they know this and we know this from the magistrate's judge findings of fact that they knew he immediately was not who they were looking for. There was absolutely no reasonable- But that's not the point. I mean, if the point of Summers is to prevent some kind of violence or disruption of the execution of the warrant, it seems to me that the interests are the same, whether it's an arrest warrant or a search warrant. Well, and I think, Your Honor, here the interests may even be a little different because they were operating on a hunch as to whether someone was there. But I would say, to answer your question, that they should, to orderly execute the arrest warrant, they could instruct the bystander to, in all the cases that seem to suggest this is reasonable, to step aside. Mr. Mastin was compliant. He did not in any way resist. The magistrate's findings are a litany of descriptions of things. They had no reason to believe he was a gang member and no reason to believe that he was involved in any criminal activity. I mean, I think we're setting a new line if we're saying that innocent bystanders, whether in the execution of a search warrant or an arrest warrant, can now be seized in a manner really co-existent with an arrest, get on the ground, crawl out here. I don't see that. Maryland v. Dewey allows a limited protective sweep in conjunction with an in-home arrest. What good would a protective sweep be if, once you identified someone else in the dwelling who could potentially be a danger, you couldn't briefly detain that person? Well, I think in Insulin, they detained him by saying, show hands. In Gomez, they detained him on the front porch. In the case law cited, even in the traffic cases, they would say, get in the car. But is it a real question here about whether this was reasonable, not whether they could have done it a different way? We're not going to prescribe how they do that. We're just going to say, well, was this method reasonable or not? Isn't that right? I think that's true. I think that's part of the analysis. It was just reasonable. We contend it was unreasonable. It wasn't necessary for officer safety. They knew that three black males and three black females who matched the description, which they meant to mean possibly could be the people we're looking for. They knew two males left and one female. So they knew in the room that there was a male and two females. And they approached the room with five to eight officers with guns and shields. I don't want to diminish officer safety at all. But I'm just saying, no one testified that they ordered him to crawl out of the room for officer safety. And I think it was certainly not a textbook. I don't read case law and indicate this is a reasonable, appropriate. The actions they took don't seem reasonably related in scope to the circumstances of what they're doing. In light of the magistrate's findings, I don't think this is a new threshold case. I think it's the magistrate's findings that set the guide here that they knew him not to be who they're looking for. They knew he was not engaged in any reasonable suspicion. They knew he was not engaged in any criminal activity, didn't believe any criminal activity was occurring in the hotel room. Did they know, did they, do you assert that they knew that the target of their arrest warrant was not in the room at that point? Yeah, I think that's part of the interesting, an interesting point of my argument, number one, is that I don't believe Stegall and Peyton Magluta, under these circumstances, authorized the execution of the warrant at the hotel. And I say that because... Two minutes remaining. I'm sorry? Okay. Two minutes remaining. Because the suppression hearing, if you search that, you will find that there's probably 10 to 12 times where the word possibly is mentioned. And what they're saying is, we possibly thought it was Nikita Rogers. We later confirmed that. They knew Hines and Mark stayed at hotels in the area. Yes, sir. They knew that the two gang members were known associates who had recently committed a crime and might be found together. They knew that they often checked into hotels under the names of girlfriends or other people, and that Hines' girlfriend, Nikita Rogers, had rented a room earlier in the day with at least one other person. And the three males matching Hines' and Mark's description entered the room with her, Nikita, later that night. And the two of the males left a short time later. They knew all of that, right? Yes, sir. But I'll point out at the suppression hearing on page 73, Mr. Officer Byrd was asked, what do you mean by match the description? He said, I saw them get out of the car from 80 to 100 yards away. He said, when you say they the description, what do you mean? And he says on page 73, matching the description means it's a possibility that that's the person we're looking for. And that's my point. They thought, well, they're possibly in the room. They possibly left. They possibly could still be in there. And when I read Magluta and the cases cited therein, what the court's requiring when you're entering a dwelling under the belief that someone is there, you're looking for a probability. You're looking for something tantamount to a probable cause by magistrate. And they weren't operating on that. They were operating on a hunch. And I don't believe Magluta, which I think Magluta properly applies Payton, but Magluta looks for probability. Didn't they execute against the expedition that had departed and then the teller at the same time? Were they obligated to execute against neither of those places since they couldn't be sure which location the defendants were more or the potential arrestees were more likely to be in? I'm not sure that makes sense. No, it doesn't. I don't think they're obligated. I think the question is, could they execute at the hotel room? I do see my time is out. Would you like for me to entertain more questions or to address these on rebuttal? Well, I think you answered the question. Are there any other questions that either of my colleagues want to ask? Not for me. Okay. You've saved your full time for your five minutes for rebuttal, Mr. Harrington. Let's hear from Mr. Talley. Thank you. Thank you, Your Honor. May it please the court. My name is Brett Talley. I'm here on behalf of the United States. I think it's definitely the case this court has always used Summers in evaluating the reasonableness of a seizure just as the magistrate judge did in this case. And I think this court could uphold the magistrate judge's ruling on that basis. But I also think this is an opportunity for the court to provide some clarity in this area and extend the categorical rule in Summers to arrest warrants. As this court noted earlier, the interests are the same in an arrest warrant and a search warrant. And I think arguably, each of those interests is actually heightened in the case of an arrest warrant. When it comes to officer safety, I don't even know if there's a question, that officer safety is more of a concern and the threat to officers is greater during the orderly completion of the arrest warrant. It's not only threatened by interference by bystanders, but it's threatened by the significant risk to those bystanders during the execution of the search warrant. I think you can see that in this case. When that door opens and you have three people, one of which is the person who they're looking for, his girlfriend, they are now in between you and where the potential suspect may be. If Mr. Hines had been in the bathroom and he hears the police come in and he's armed and he's not going to let them take him alive, he now has three people in between him and the police. If there's a shootout between them, those people are endangered. If Mr. Hines grabs Ms. Rogers and puts a gun to her head and is now holding her hostage, obviously the arrest is not going to occur. So I think that factor is also heightened. And then lastly, the last factor that the Supreme Court talks about in Bailey versus United States, the interest in preventing flight. When you're executing an arrest warrant, one thing you don't want to happen is for other people to alert the individual against whom the arrest warrant needs to be executed that the police are coming for him. And that is obviously a problem when there are other people present at the scene. And then those three factors, those three interests, law enforcement interest in Summers and in Bailey were balanced against the intrusion on personal liberty. And I think arguably the intrusion on personal liberty, if you're an innocent third party who is present when a search warrant versus an arrest warrant is executed. If you're the innocent third party when the search warrant is executed, you're probably going to be there a while. We're talking hours versus minutes as far as the time you're going to be seized. And also an arrest warrant has a protection for bystanders that the search warrant doesn't necessarily have. And that is this third party doctrine that says that absent exigent circumstances, the police can't just show up at your home because they think someone that they have an arrest warrant for might be present there. So I think if you're balancing both the interest of law enforcement against the interest of the person who's going to be detained, there's a real argument that it's time for this court and for other courts to go ahead and extend that rule that has been applied religiously to search warrants to arrest warrants as well. And I think that's consistent with the Maryland versus Bowie or the cases in this court, Hudson v. Hall, United States versus Clark. I think what this court is recognizing, what the Supreme Court is recognized is that a law enforcement officer, when they're performing their duty, has the right to direct and control the movements of people who were present at that time. And I think the Supreme Court said it best in Summers that this is, for the safety of all involved, is going to be greatest when police can execute that unquestioned control. The police shouldn't have to make a split-second decision when that hotel door opens. And frankly, it shouldn't take a 45-page magistrate judge opinion, an oral argument in front of the 11th Circuit, to conclude that the brief detention of individuals present during the execution of an arrest warrant against two men suspected of robbery and possibly homicide who were both members of a violent gang is reasonable. That should be something the police should be able to rely on without having to calculate all these different factors. What factors do police have to consider? Go ahead, Judge. No, you go ahead, Judge. Well, I was going to ask a question about the record. I didn't see anything in the record that indicated specifically aspects of the restraint with regard to space and time. But as I understood the facts, and I saw the pictures that were exhibits and evidence, he was at the door, opened the door into the hallway, and then he was asked to move into the hallway. Was there anything in the record that described the distance that he traveled to get from what sounds like was the threshold out into the hall? Your Honor, I don't know that there was anything that specifically spoke to that, other than the fact that from the record, it seems as though essentially the police officer and Mr. Mastin were almost face-to-face. The door was slightly open. The way I read the record, the door is slightly open. The police are ready to go into this room, and presumably when they go into that room, the first thing they're going to do is tell everybody in the room to get down on the ground, and they're going to seize those people in that instance. And I don't know if we'd even be here if that had been the case. I think people would recognize that. I don't want to take too much time. I just wanted to know if I had missed it. I don't think you've missed it, Your Honor. I don't think there's anything specific about that. And Judge Grant, as to your question about what factors would be considered, do you mean in the instance where Summers was extended to arrest warrants, or do you mean in this particular case, as the law currently stands? In the broader extension of Summers. I think if you had a broader extension of Summers, and you said that the Summers rule was going to apply to arrest warrants, you would essentially have the same thing you have in Summers. If a magistrate judge, a district court judge issues an arrest warrant, and the police are lawfully executing that arrest warrant, during the execution of that arrest warrant, they could briefly seize and detain individuals in the immediate area of the arrest warrant. I think you would have a preliminary step that you don't have in search warrants, because the person seized could make the argument, as Mr. Mastin makes here, that there is the third party doctrine, this is my home, you can't just come into my home and seize me and arrest somebody who's here as a guest. So there would be that first threshold question. In this case, I think we look at the facts, it's very clear that Mr. Mastin is neither the owner of this hotel room, nor does he stand in the shoes of the owner of this hotel room. The record reflects that Mr. Mastin had been there for 15 to 30 minutes. The reason he was going to the door in the first place, according to the testimony at trial, was he was actually leaving to go to work. He wasn't even going to stay for the playing of cards, and the swimming, and the letting the hair down, and all that stuff. I mean, he is the briefest of guests. So I think that would be your first question. Does the third party doctrine apply? If it doesn't, if the arrest warrant is valid, and it's executed reasonably, the detention would be reasonable per se, just as it would be in the execution of a search warrant. And I think... Are we still called to consider whether it was reasonable for the police to conclude that this was the dwelling of the suspects that they were trying to arrest? Or has that issue gone by the wayside by now? I think you would be called to conclude that. I think that sort of goes to your third party doctrine and the Peyton question. I think in this particular case, there's obviously a lot of evidence that the police reasonably concluded that Mr. Hines would have been there. They did know that Mr. Hines rented rooms under his girlfriend's name. They knew that his girlfriend was there. They'd confirmed after the car matching the description of the girlfriend returned... We don't really have to reach the third party doctrine, do we? I mean, we don't have to reach whether Mastin has standing if under Peyton, the officers reasonably believe the suspects were in the room. Well, Your Honor, I think that's probably right because the two provisions... The first provision of Peyton is that the room is in fact the suspects. So that takes away the third party doctrine because... And just take this case as an example. I mean, it just seems to me that's just the easier and cleaner way to decide this without... I mean, we've got to decide the Peyton question, it seems to me. Yes, I think that's right. I think that's right. If in a hypothetical world, this were Mr. Mastin's hotel room, then I think that third party doctrine comes... It does come into play in that case, unless it's a situation where it's also Hines' hotel room. I mean, I think that's... And I know I realize I'm not being very clear here. So in a hotel room as standing, that's a commedia mess of a question than just saying under Peyton that they had a reasonable belief the suspects were there. Correct. I think that's right. If they have a reasonable belief the suspects are there and the suspects are inside, they can go in... Well, and that it is the suspect's room, they can go in and seize that suspect. And then I think you would apply the Summers doctrine to say in the process of seizing that suspect, they can briefly detain other individuals who were present. I think that's the cleanest way to do it. And I think... Now, this court would be deciding for the first time if you were to follow what I'm suggesting, that Summers applies categorically. You don't have to do that. The easiest way to decide this case is just to say that the reasonable... If you look at this, it was reasonable what the police did at totality of the circumstances, considering all the factors. But I think for the sake of judges, lawyers, and especially police officers who were called upon to execute these arrest warrants every day, some clarity in this area would be good. As I said earlier, this case did not deserve a 45-page opinion and an 11th Circuit argument just on those basic facts. And I don't think you can ask police officers to try and make those determinations. Well, I think to me, this is the sort of appeal that, quite frankly, whether Summers extends to this circumstance is the sort of thing that warrants a presidential opinion from our circuit. And ordinarily, we entertain oral argument before we do that, Mr. Talley. Oh, I agree with you 100% on that, Your Honor. If what the court wants to do is extend the Summers' rule to arrest warrants, yes. I'm glad we had this argument. And that's sort of my point. We're here. We're having this discussion. We're looking at this in depth. This is a circumstance where the court could do that and should do that. And I guess the point I'm trying to make is police officers would then have that surety that they could act in this way without going through, as I said, the 45-page opinion and the 11th Circuit oral argument. It would give them some guidance. It would give judges some guidance. It would give magistrate judges some guidance. I think it would be very valuable for everyone in the circuit to have that direction. I don't know that I have anything else. If the court has any other questions, I'm happy to entertain them. Otherwise, I will return the balance of my time. Thank you, Mr. Talley. Mr. Herndon, you've saved five minutes for rebuttal. Thank you, Your Honor. Your Honor, I don't believe this is the case to extend categorical attention to a home. There has been no probable cause determination that you would typically have with a search warrant. And now we're going to place the categorical attention based on the police officer's execution of an arrest warrant. And in this case, backing up to where I left off at the first part, this patent does not apply here. It might apply to Nikita Rogers' house. I would grant you her apartment or whatever. That's not the issue. The issue is these officers did not have the reasonable good faith basis to believe that Hines or Mock were in the room. And again, the suppression hearing says 10 times, I think there's 12 times it says possibly to deal with the RAM. The other 10 deal with whether it was possibly Nikita, whether it was possibly Hines. From 80 to 100 yards, we thought that might be Mock. And so they do not meet the threshold of 11th Circuit law that you need to probably know they're there. So in this case, the fundamental problem is they didn't know that. They were operating on a hunch or a guess. And so they exceeded the scope of the warrant. It seems to me it was reasonable for them to believe that at least one of them was there. Your Honor, he said to me that he didn't even know it was Nikita Rogers when she got out of the car. He called the clerk to confirm that. Of course, she knew that. She had checked into that room earlier, right? She had, sure. But they said matching the description with another person, right, who could have still been there. Someone in the car. Well, he said it was possible somebody was there. It was possible somebody wasn't. It was possible Hines and Mark had left. I just don't think the court's Woods decision in Magluta talks about probability. For an officer to make that determination, and we're not going to require a search warrant, it has to be based on the probability. It's almost like the indicia of hearsay. It's the reliability of their belief. We said in Magluta, though, that there was no direct evidence the suspect had been seen that day. I'm sorry, Your Honor. In Magluta, we said there was no direct evidence the suspect had been seen that day. But he lived on a private island. They knew he was there. They had been surveilling him here. They'd surveilled three hours. They thought they were possibly there, possibly had left. I just don't think it meets Magluta in... What really did it was that his drug associate and a vehicle connected to him were there, and the porch light was on. Yes, sir. And to shift to a couple of ideas, I don't believe this is the case to lay down a new rule that bystanders could be seized, so all bystanders from here on out could be ordered to lay down, to crawl out. I mean, in no case, Gomez doesn't reach that point. Enzlin doesn't reach that point. The traffic cases don't reach that point. The directing of manner is to step aside. And again, I think... Two minutes remaining. Yes, thank you. And we've got to remember the magistrate judge has already made these findings a fact, that there was no reason to suspect him. There was no reason to believe there was criminal activity in the hotel room. Is your suggestion that the officers should have politely asked him to step aside, and that would have been the reasonable thing to do? Certainly would have been permissible and reasonable. There was no reason to put him on the ground and treat him like the suspect. I just don't think that's reasonable. That violates his Fourth Amendment privacy rights. And I don't believe you have to reach standing, because he's got a personal privacy right. He's seized before they ever entered the room. I do see I only have about a minute left. I would like to address my third argument, because I do believe that... No, no, no. We don't address arguments that the affilee has not had an opportunity to respond to on rebuttal. But you've made that belief, and we have it. You haven't waived anything. But this is rebuttal. I see. Are there any other questions that I can answer for the court? I don't hear any. Mr. Herndon, I know you were court appointed, and we very much appreciate you accepting the appointment and assisting us this morning. Thank you, Your Honor. We would ask for just a reversal of the motion to suppress with instructions or alternatively a new trial. Thank you very much. Thank you.